———————————————————— :
                                           :
CARNELL GIBBS,                             :      Civ. No. 11-1137 (NLH)
                                           :
        Petitioner,                        :
                                           :      **OPINION**
        v.                                 :
                                           :
GREG BARTKOWSKI, *et al.*,                 :
                                           :
        Respondents.                       :
———————————————————— :

APPEARANCES:
Carnell Gibbs, #407538 / 399805
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625
    Petitioner, <u>pro se</u>

John J. Santoliquido, Esq.
James F. Smith, Esq.
Atlantic County Prosecutor's Office
4997 Unami Boulevard
Mays Landing, NJ 08330
    Counsel for Respondents

**HILLMAN, DISTRICT JUDGE**

Before this Court is the Amended Petition for a writ of

habeas corpus of Petitioner Carnell Gibbs ("Petitioner"),

brought pursuant to 28 U.S.C. § 2254. ECF No. 15. For the

following reasons, the Court denies the Petition and declines to

issue a certificate of appealability.

I. <u>BACKGROUND</u>

    In its opinion affirming the denial of post-conviction

relief ("PCR"), the Superior Court of New Jersey, Appellate

Division, provided the following summary of the factual

background of Petitioner's case:

> During the early morning hours of October 22,
> 1998, in the parking lot of a bar, defendant
> shot John Byrd and Alex Crawford. Crawford
> died and Byrd survived. On the evidence
> presented[,] the jury could have found the
> following additional facts. Defendant and
> Byrd had had a contentious relationship for
> some period of time. Byrd was the bigger man,
> and on prior occasions had taunted and struck
> defendant. Byrd had previously pulled a gun
> on defendant and while defense witnesses
> testified that Byrd had a gun on October 22,
> 1998, those witnesses did not report such
> information to the police and no gun was found
> on Byrd after defendant shot him. The jury
> certainly could have concluded that Byrd was
> unarmed when he was shot.
>
> Earlier in the evening of October 21, Byrd
> allegedly gave defendant threatening looks and
> called defendant names when they were both
> inside the bar. Byrd also boasted that he
> owned "big dogs and big guns." Defendant left
> the bar and walked back to his sister's
> apartment. He retrieved his own dog and a
> nine millimeter handgun. Defendant's cousin,
> Thomas Allen, took the gun from defendant
> before returning to the bar. When the two men
> returned to the bar's parking area, defendant
> confronted Byrd and challenged him to a fight.
> Defendant pulled up his shirt to show Byrd he
> was unarmed. Byrd testified that he took off
> his jacket in anticipation of a fight, but the
> fight was preempted by the shooting.
> Defendant testified he thought he saw a chrome
> gun in Byrd's waistband. Allen handed
> defendant the gun he was holding for
> defendant, and defendant proceeded to shoot
> Byrd three times. Byrd fell to the ground and
> defendant stood over him, firing multiple
> shots at him. Alex Crawford, essentially an
> innocent bystander, approached defendant with
> his hands raised, perhaps in an effort to stop

defendant [from] shooting Byrd. Defendant then shot Crawford twice and walked away. Crawford died from his wounds. Byrd was shot so many times that paramedics ran out of dressings for his wounds, but he lived. The evidence was that defendant had fired seventeen shots, the maximum capacity of his nine millimeter handgun.

ECF No. 51-33 at 3-4.

A jury convicted defendant of murder, N.J.S.A. 2C:11-3a(1)(2); attempted murder, N.J.S.A. 2C:5-1; conspiracy, N.J.S.A. 2C:5-2; unlawful possession of a weapon, N.J.S.A. 2C:39-5b; and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a. The trial court sentenced defendant to an aggregate term of seventy years in prison, fifty years for murder and a consecutive twenty years for attempted murder, subject to the parole ineligibility provisions of the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2. Defendant appealed his convictions and sentence, and we affirmed his convictions. The trial court, however, had attached NERA's parole disqualification provisions to the sentence for murder, as well as to the sentence for attempted murder, and in light of State v. Manzie, 335 N.J. Super. 267 (App. Div. 2000), aff'd. by equally divided Court, 168 N.J. 113 (2001), we remanded the matter to the trial court for re-sentencing. State v. Gibbs, No. A-860-00 (App. Div. May 24, 2002). At that re-sentencing, the trial court again imposed an aggregate sentence of seventy years in prison, fifty years for murder, with a thirty-year period of parole ineligibility, and a consecutive twenty years in prison for attempted murder, subject to NERA. Defendant appealed his sentence as excessive, and his appeal was heard on an Excessive Sentence Oral Argument calendar, Rule 2:9-11; we affirmed his sentence. State v. Gibbs, No. A-0758-02 (App. Div. June 9, 2003). The Supreme Court denied defendant's petition for certification. 174 N.J. 547 (2002).

Id. at 2-3.

As noted in the opinion above, Petitioner appealed his conviction and sentence. The Appellate Division affirmed his conviction on May 24, 2002, but remanded on the matter of sentencing. ECF No. 51-17. The New Jersey Supreme Court denied certification on October 22, 2002. ECF No. 51-20. Petitioner was resentenced by the trial court on June 21, 2002, to the same aggregate sentence of seventy years in prison, but with a thirty-year period of parole ineligibility on the murder count. ECF No. 51-18; ECF No. 51-10 at 33-34. The Appellate Division affirmed that sentence on June 12, 2003, ECF No. 51-22, and Petitioner does not appear to have filed a petition for certification on the matter of his re-sentencing. Petitioner filed a PCR petition, which was denied in a letter opinion by the Superior Court of New Jersey, Law Division, on August 22, 2007. ECF No. 51-28. Petitioner appealed, and on May 21, 2010, the Appellate Division affirmed the denial of PCR. ECF No. 51-33. The Supreme Court of New Jersey denied certification on October 7, 2010. ECF No. 51-35. Petitioner then filed a habeas petition with this Court executed on February 9, 2011. ECF No. 1. The Court administratively terminated the petition and Petitioner filed an Amended Petition executed on February 7,

2012. ECF No. 15. Petitioner raises fourteen grounds for habeas relief:

1. Petitioner was denied the effective assistance of trial and appellate counsel right [to a] fair trial and to Due Process of the law under the state and federal constitutions since trial counsel failed to: (1) ask the court to interview the juror in order to determine juror taint: and (2) move to disqualify jurors whom were unfit and [] appellate counsel was ineffective in fail[ing] to ask the court to interview jurors: and [(3)] a new trial should have been granted due to such failure.

2. Petitioner was denied the effective assistance of appellate counsel, right to a fair trial and to due process of the law under the state and federal constitutions since appellate counsel failed to argue that a new trial was warranted as the state failed to provide the Petitioner with a complete report of its ballistics expert. The error was contrary to clearly established federal law and was an unreasonable determination of the facts in light of the evidence presented therefore the writ should issue.

3. Petitioner was denied the effective assistance of trial counsel right to a fair trial and to Due Process of the law under the state and federal constitutions since trial counsel failed to have Nakia Allen and Omar Davis testify on his behalf to establish[] a self-defense[,] was contrary to clearly established federal law and was an unreasonable determination of the facts in light of the evidence presented therefore the w[r]it should issue.

4. Petitioner was denied the effective assistance of trial counsel under the state and federal constitutions since trial counsel failed to pursue an intoxication defense which was contrary to clearly established federal law and was an unreasonable determination of the fact[s] in light of the evidence presented therefore the writ should issue.

5. Petitioner was denied the effective assistance of trial and appellate counsel, right to a fair trial and to due process [] under the state and federal constitutions since the verdict sheet failed to indicate that self-defense was a defense which was [a] contrary determination

of the fact in light of the evidence presented therefore the writ should issue[].

6.   Petitioner was denied the effective assistance of trial counsel, right to a fair trial and to due process of the law under the state and federal constitution[s] since trial counsel failed to call Ebony Mays as a witness which, was contrary to clearly established federal law and was an unreasonable determination of the fact in light of the evidence presented[,] therefore the w[r]it should issue.

7.   Petitioner was denied the effective assistance of trial counsel, right to a fair trial and to due process of the law under the state and federal constitutions since a tape conversation with trial counsel revealed that his performance was objectively unreasonable, which was contrary to clearly established federal law and was an unreasonable determination of the fact in light of the evidence presented therefore the w[r]it should issue.

8.   Petitioner was denied the effective assistance of trial counsel, right to a fair trial and to due process of the law under the state and federal constitutions since trial counsel failed to call Kevin Dorsey to testify, which was contrary to clearly established federal law and was an unreasonable determination of the fact in light of the evidence presented therefore the w[r]it should issue.

9.   Petitioner was denied the effective assistance of trial counsel, right to a fair trial and due process of the law under the state and federal constitutions since trial counsel advise[d] the Petitioner to lie about the number of shell casings contained in the weapon, which was contrary to clearly established federal law and was an unreasonable determination of the fact in light of the evidence presented[,] therefore the writ should issue.

10.  Petitioner was denied his constitutional right to due process of the law and right to a fair trial as no objection was made to the jury charge since the charge failed to distinguish the factual predicates for the conviction for murder from that of aggravated and reckless manslaughter and the conviction was not based on an invalid predicate.  [This w]as contrary to clearly established federal law, and an unreasonable application of federal [law], therefore, the writ should issue.

11.  Petitioner was denied the effective assistance of
trial and appellate counsel, right to a fair trial and to
due process [of] the law under the federal constitution[]
since the jury charge was confusing and no objection was
made thereto, which was contrary to clearly established
federal law, and an unreasonable application of federal
law, therefore, the writ should issue.

12.  The cumulative effect of trial counsel's many
deficiencies deprived the Petitioner of effective
assistance of counsel.  U.S. Const., Amends. VI; N.J.
Const. (19470, Art I, Para. 10 and the writ should issue.

13.  Petitioner received an illegal sentence under <u>Blakely
v. Washington</u>.

14.  The trial court erred in denying the defense Petition[]
for post conviction relief or, in the alternative, in not
affording the Petitioner an[] evidentiary hearing to fully
address his contention that he failed to receive adequate
legal representation at the trial and appellate levels.

ECF No. 15 at 13–24.

The Court dismissed the Amended Petition as time-barred

under 28 U.S.C. § 2244(d) on August 17, 2012.  ECF No. 19.

Petitioner filed a motion for reconsideration, which the Court

denied, and the case was again dismissed on March 18, 2013.  ECF

No. 24.  Petitioner appealed to the Third Circuit Court of

Appeals, and on April 17, 2015, the Third Circuit vacated this

Court's March 18, 2013 judgment, finding the petition was not

time-barred, and remanded this matter for further proceedings.

ECF No. 40.  On June 8, 2015, this Court issued an Order

reinstating the action in accordance with the Mandate of the

Third Circuit, ECF No. 46, and Respondents were required to file

an Answer.  ECF No. 42.  In their Answer, Respondents argue that

Petitioner's claims are meritless.[1]  ECF No. 51 at 18–40.  The

Court agrees that the claims lack merit.

## II.  <u>LEGAL STANDRD</u>

Under 28 U.S.C. § 2254(a), the district court "shall

entertain an application for a writ of habeas corpus [o]n behalf

of a person in custody pursuant to the judgment of a State court

only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States."  A

habeas petitioner has the burden of establishing his entitlement

to relief for each claim presented in his petition based upon

the record that was before the state court.  <u>See</u> <u>Eley v.

Erickson</u>, 712 F.3d 837, 846 (3d Cir. 2013); <u>see also</u> <u>Parker v.

Matthews</u>, 567 U.S. 37, 40–41 (2012).  Under the statute, as

amended by the Anti-Terrorism and Effective Death Penalty Act,

---

[1]    Respondents do not argue that Petitioner's claims are
unexhausted.  Instead, in Respondents Answer, they repeatedly
refer to the state court's opinion denying PCR.  Reviewing
Petitioner's PCR, it appears that many of the claims raised in
Petitioner's PCR petition, were never raised on appeal.  <u>See</u> ECF
No. 51-31; ECF No. 51-34.  In fact, in the Amended Petition for
habeas relief, Petitioner attaches Addendum I, listing only four
points raised on his appeal from the denial of PCR, and only
three points raised to the New Jersey Supreme Court on his
petition for certification.  ECF No. 15 at 10–11.  Thus, many of
Petitioner's claims appear unexhausted.  <u>See</u> 28 U.S.C. §
2254(b)(1)(A).  Nevertheless, as will be demonstrated below,
because the claims can be denied on the merits, the Court will
not address the issue of exhaustion.  <u>See</u> <u>Taylor v. Horn</u>, 504
F.3d 416, 427 (3d Cir. 2007); <u>Bronshtein v. Horn</u>, 404 F.3d 700,
728 (3d Cir. 2005).

28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts.  See Renico v. Lett, 559 U.S. 766, 772–73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).  Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court.  See Woods v. Donald, 135 S. Ct. 1372, 1376 (2015).  "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  Id. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and

the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court."  Leyva v. Williams, 504 F.3d 357, 365 (3d Cir. 2007) (citing Stevens v. Delaware Corr. Ctr., 295 F.3d 361, 369 (3d Cir. 2002)).  This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'"  Id. (citing United States v. Bendolph, 409 F.3d 155, 173 (3d Cir. 2005) (quoting Duckworth v. Serrano, 454 U.S. 1, 3 (1981)).

To the extent that a petitioner's constitutional claims are unexhausted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2).  See Taylor v. Horn, 504 F.3d 416, 427 (3d Cir. 2007); Bronshtein v. Horn, 404 F.3d 700, 728 (3d Cir. 2005).

## III.    DISCUSSION

### A. Grounds One through Nine, Eleven & Twelve: Ineffective Assistance of Counsel

The majority of Petitioner's claims relate to the alleged ineffective assistance of his trial and appellate counsel. The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. Id. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687–88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." Hinton v. Alabama, 134 S. Ct. 1081, 1088 (2014).

Second, a petitioner must establish that counsel's "deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." Strickland, 466 U.S. at 669. To establish prejudice, the defendant must show that "there is a reasonable probability that the result of trial would have been different absent the deficient act or omission." Id. at 1083. On habeas review, it is not enough that a federal judge would have found counsel ineffective. The judge must find that the state court's resolution of the issue was unreasonable, a higher standard. Harrington v. Richter, 562 U.S. 86, 101 (2011).

### 1. Ground One: Impartial Jurors

Petitioner alleges that his trial and appellate counsel were ineffective for failing to ask the court to interview three jurors who were familiar with Petitioner, and for failing to move to disqualify those jurors. ECF No. 15 at 13–15. In support of his claims, he alleges that three jurors: Daniel Jackson, Reggie Gilford and Albie Mansfeld were all on bad terms with Petitioner and that he both orally and in writing told his trial counsel, but trial counsel did nothing.[2] Id.

---

[2] The Court finds no juror by the name of Reggie Gilford on the record. As noted by Respondents, there was a juror named Reginald Bailey, ECF No. 51-3 at 14, but the two surnames do not match.

The Appellate Davison, in affirming the denial of PCR,
having previously cited to the standard laid out in Strickland,
addressed this claim and found it meritless:

> We turn now to defendant's final argument with
> respect to his claim of ineffective assistance
> of counsel, which relates to the process of
> jury selection. As part of defendant's motion
> for a new trial, defendant submitted
> certifications from several friends and family
> members that questioned the impartiality of
> two members of the jury panel. In arguing the
> new trial motion, defense counsel told the
> trial court that he had not been aware of these
> contentions until after the trial had
> concluded. The trial court denied defendant's
> new trial motion and in doing so noted that
> defense counsel had not sought to have these
> panel members interviewed with respect to
> these allegations.
>
> Several years later, in conjunction with
> defendant's PCR petition, the trial court had
> a certification from defendant's mother and
> sister that they had both told defendant's
> trial attorney that they recognized two
> members of the jury panel and that defendant
> had told them he had informed his trial
> counsel of this, and the attorney had
> responded that this "might work in our favor."
> Defendant also submitted a certification that
> he had told his trial attorney that he had
> difficulties in the past with these two
> potential jurors but that the attorney did not
> pursue the matter and "explained that if the
> trial is lost, an issue will exist for
> appeal."
>
> Under either scenario, we are satisfied
> defendant failed to establish a prima facie
> case of ineffective assistance of counsel
> warranting a plenary hearing. If the
> statements of defense counsel at the new trial
> motion are accurate, to the effect that he was
> not informed of the allegations with respect

to these jurors until after the trial had
concluded, he could not be deemed ineffective
for letting them remain on the panel.  If the
statements in the certifications of defendant
and his sister are accurate, that they
discussed with defendant's trial attorney
during the trial the question of these jurors
participating, and he responded either that it
could work to defendant's advantage or could
provide an issue on appeal, defendant's
attorney made a strategic choice of how to
proceed.  If defendant thought he was
obtaining a jury tilted to the side of the
defense, rather than an impartial jury, he
should not be heard to complain now if that
choice did not work out as he had hoped.  If,
on the other hand, he thought his attorney was
placing in his pocket an issue to be presented
on appeal, we decline to reward such a
strategy, with its obvious potential to
undermine the integrity of the judicial
proceedings.

Finally, we see no basis to conclude that
defendant's trial attorney was ineffective for
not filing a motion seeking to have these
particular jurors interviewed with respect to
their knowledge of defendant.  Each had
specifically denied such knowledge during the
*voir dire*.  The material contained with the
certifications was far too vague to support a
finding that it was reasonably probable that
the trial court would have acceded to such a
motion if one had been filed. Defendant thus
fails to satisfy the <u>Strickland</u>/<u>Fritz</u>
standards for ineffective assistance.

ECF No. 51-33 at 14–16.

The Sixth Amendment right to a jury trial, guarantees a

criminal defendant the right to a "fair trial by a panel of

impartial, indifferent jurors," <u>Irvin v. Dowd</u>, 366 U.S. 717, 722

(1961) (internal quotation marks omitted), and that right is

extended to state criminal trials through the Due Process Clause of the Fourteenth Amendment. Duncan v. Louisiana, 391 U.S. 145, 148-49 (1968). "An impartial jury consists of nothing more than jurors who will conscientiously apply the law and find the facts." Lockhart v. McCree, 476 U.S. 162, 163 (1986); see also United States v. Tindal, 357 F. App'x 436, 438 (3d Cir. 2009) (explaining that "[j]urors are presumed to be impartial"). *Voir dire* "is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." Connors v. United States, 158 U.S. 408, 413 (1895). "This is so because the determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge." Ristaino v. Ross, 424 U.S. 589, 594-95 (1976) (internal quotations and citation omitted).

As detailed by the Appellate Division decision, Petitioner raised this argument first in his motion for a new trial, and he submitted affidavits from three individuals who claimed that certain of the jurors were acquainted with Petitioner. ECF No.17, 183-85. The trial judge denied the motion for a new trial explaining that there was nothing to indicate any of the jurors were impartial. ECF No. 51-9 at 23-24. Petitioner raised the argument again on his petition for PCR, submitting certifications from his mother, his sister, and from himself, stating they told trial counsel during trial that they were

acquainted with certain of the jurors, but counsel refused to act on the information, stating "it might work in our favor." ECF No. 51-31 at 195–96, 240–41. The PCR court denied the claim without an evidentiary hearing. ECF No. 51-28.

As the Appellate Division notes, and as verified by the record, during jury selection, the trial judge asked if any jurors were acquainted with Petitioner and no jurors replied that they were. See ECF No. 51-3 at 10. Further, during *voir dire*, each juror, including Daniel Jackson and Albie Mansfield were questioned by the judge as to their ability to be impartial, and both stated they could be. ECF No. 51-3 at 43–44. Additionally, after trial counsel made a motion for a new trial, a hearing was held in which trial counsel explicitly stated, multiple times, that he was not aware of the allegations surrounding the impartiality of the jurors, until close to a month after the trial concluded, when Petitioner's family-members alerted him to that fact. ECF No. 51-9 at 7–9. Based on these facts, the Appellate Division did not violate clearly established law in finding trial counsel was not deficient under Strickland, in failing to move for the jurors to be dismissed.

Moreover, even if Petitioner's allegations are true, that Petitioner or his family-members did in fact tell counsel before the conclusion of trial that they recognized certain jurors, the Appellate Division decision is still not objectively

16

unreasonable. See Williams v. Taylor, 529 U.S. 362, 409–10.

The jurors gave no indication that they were acquainted with

Petitioner, stated they could be impartial, and Petitioner has

failed to indicate otherwise; the certifications and affidavits

are simply too broad to support any other conclusion. Based on

these facts, the Appellate Division applied the prejudice prong

of Strickland, finding that even had trial counsel made a motion

for certain jurors to be interviewed regarding their knowledge

of Petitioner, the motion would have been denied. The Court is

satisfied that the Appellate Division appropriately applied

Strikcland.[3] Further, to the extent trial counsel made a

strategic decision to retain certain jurors, strategic choices

generally do not violate Strickland. See Strickland, 466 U.S.

at 681 ("Because advocacy is an art and not a science, and

because the adversary system requires deference to counsel's

informed decisions, strategic choices must be respected in these

circumstances if they are based on professional judgment.");

---

[3]     The Appellate Division also states that to the extent
Petitioner "thought his attorney was placing in his pocket an
issue to be presented on appeal" such a strategy is improper as
it undermines the integrity of the judicial process. ECF No.
51-33 at 15. Petitioner argues, however, that it was trial
counsel who made this strategic choice, not Petitioner himself.
Nevertheless, to the extent the Appellate Division failed to
fully address trial counsel's error in saving the matter for
appeal, that would not change the result, in light of the
Appellate Division's reasonable finding that there was no actual
juror bias.

Hess v. Mazurkiewicz, 135 F.3d 905, 908 (3d Cir. 1998) ("Our review of ineffective assistance of counsel claims does not permit us, with the benefit of hindsight, to engage in speculation about how the case might best have been tried. We therefore accord counsel's strategic trial decisions great deference.").

Finally, insofar as Petitioner has failed to demonstrate his trial counsel was ineffective on this matter, appellate counsel cannot be deemed ineffective for failing to raise this claim. See, e.g., United States v. Mannino, 212 F.3d 835, 840 (3d Cir. 2000) (explaining, that if an underlying claim "is not meritorious . . . defendants can not successfully argue that counsel's failure to raise the claim on direct appeal denied them their constitutional right of representation"); Moore v. Mitchell, 708 F.3d 760, 776 (6th Cir. 2013) ("a petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit"). As such, the Appellate Division's reasoning does not amount to an unreasonable application of the Strickland standard, and the claim is denied.

### 2. Ground Two: Discovery

In Ground Two, Petitioner argues that appellate counsel was ineffective for failing to adequately argue for a new trial, insofar as the State failed to disclose the notes of the State's

18

ballistics expert.  ECF No. 15 at 16–17.  Petitioner explains
that the State's expert testified that all seventeen shell
casings found at the scene were from the same weapon, but the
expert's report indicated otherwise.  Id.  At trial, the State's
ballistics expert said that based on his notes, his report was
in error and in fact all the casings were from the same weapon.
Id.

The Appellate Division, in affirming the denial of PCR,
rejected this claim:

> We turn now to defendant's second claim of
> ineffective assistance of counsel, this time
> directed toward the attorney who represented
> defendant in connection with his direct appeal
> to this court.  Following the shooting,
> seventeen shell casings and seven bullets or
> bullet fragments were recovered from the scene
> and were delivered to the ballistics
> laboratory maintained by the State Police for
> examination.  Lieutenant Gerald Burkhardt
> supervised this ballistics unit and conducted
> the examination.  He prepared a report
> summarizing the results of his examination,
> and he testified at defendant's trial.
>
> Lieutenant Burkhardt noted in his report that
> of the 17 shell casings, 16 were 9 mm Luger
> caliber discharged shells and one was a 9 mm
> Luger caliber Winchester discharged shell.
> The latter was identified in his report as
> specimen # 6, the remaining shells as
> specimens # 1, 2 and 7 through 20.  He
> concluded his report with the following
> language: "Compared the seventeen shells
> marked # 1, # 2 and # 7 thru # 20 against each
> other with positive results.  The seventeen
> shells marked # 1, # 2 and # 7 thru # 20 were
> discharged in the same firearm."

At trial, Lieutenant Burkhardt testified that specimen # 6, the Winchester shell, was also discharged in the same firearm. Defendant's attorney protested, noting that Lieutenant Burkhardt had not included specimen # 6 in his report's concluding remarks. Burkhardt said the omission was a typographical error on his part and that his original laboratory notes included specimen # 6 in his examination and conclusions. After defendant was convicted, his attorney moved for a new trial, arguing that he should have been supplied Burkhardt's laboratory notes in advance of trial. The trial court denied the motion, and his appellate attorney did not raise the issue on appeal. Defendant now complains that this omission on the part of his appellate attorney constituted ineffective assistance. The trial court rejected this argument as do we.

We note initially that a defendant does not have a constitutional right to have all possible claims raised by appellate counsel. Jones v. Barnes, 463 U.S. 745, 750-51, 103 S. Ct. 3308, 3312, 77 L. Ed. 2d 987, 993 (1983). "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard." Id. at 754, 103 S. Ct. at 3314, 77 L. Ed. 2d at 995. See State v. Gaither, 396 N.J. Super. 508, 515 (App. Div. 2007), certify. denied, 194 N.J. 444 (2008).

We agree with the trial court that there was no discovery violation, and thus defendant cannot establish a prima facie case that his appellate attorney was ineffective for failing to present that argument in the direct appeal. Rule 3:13-3 does not require that an expert witness for the prosecution supply to defendant's attorney the expert's notes which are not in the possession of the prosecutor. Pressler, Current N.J. Court Rules, comment

>3.2.9 on R. 3:13–3 (2010).  State v. Lozada,
>257 N.J. Super. 260, 275 (App. Div. 1992)
>(noting "the breadth of discovery . . . does
>not include the expert's personal notes which
>are not in the prosecutor's file").
>
>Further, we are unable to ascribe the weight
>to Burkhardt's typographical error that
>defendant does on appeal.  We note, for
>instance, that the prosecutor stated in his
>opening remarks that the seventeen casings had
>been sent to the State Police for analysis and
>that all of the casings came from the same
>gun.  Defendant was thus put on notice at the
>outset of the trial what testimony to
>anticipate.  Moreover, Burkhardt's report, in
>addition to specifying the specimen numbers,
>stated that seventeen shells were all
>discharged from the same weapon.  The number
>seventeen could only be reached if specimen #
>6 were included in that total.

ECF No. 51-33 at 11–13.

The Appellate Division, having previously cited to the law in Strickland, rejected this claim.  "[I]t is a well established principle . . . that counsel decides which issues to pursue on appeal," Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996), and appellate counsel need not raise every "colorable" claim suggested by a defendant.  Jones v. Barnes, 463 U.S. 745, 754 (1983).  This is because the heart of effective appellate advocacy involves the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." Sistrunk, 96 F.3d at 670 (citing Smith v. Murray, 477 U.S. 527, 536 (1986)).  The Supreme Court has therefore held that "[g]enerally, only when ignored issues are clearly stronger

than those presented, will the presumption of effective
assistance of counsel be overcome." Smith v. Robbins, 528 U.S.
259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th
Cir. 1986)). Because New Jersey state law does not require an
expert's notes to be disclosed, this argument, if raised on
appeal, would likely not have prevailed, and does not present a
stronger argument than those raised on appeal. See Smith, 528
U.S. at 288. Thus, the Appellate Division did not unreasonably
apply Strickland to the facts of this case, and this claim is
denied.

### 3. Ground Three: Witness Testimony

Petitioner next argues that his trial counsel was
ineffective for failing to present two witnesses at trial: Nakia
Allen and Omar Davis, as he claims they would have testified
that the victims had guns on them at the time of the shooting,
thus bolstering his argument of self-defense. ECF No 15 at 18.
In addition, he explains that Nakia Allen told Petitioner's
sister, Terry Gibbs, that Mr. Byrd had a gun, and Petitioner's
sister relayed that information to trial counsel. Id.

The Appellate Division, in affirming the denial of PCR,
rejected this claim:

> Defendant contends his trial counsel was
> ineffective for failing to call Nakia Allen
> and Omar Davis as witnesses at his trial, who
> could both have testified that Byrd was armed
> at the time of the shooting. Such testimony

would have bolstered defendant's claim that he acted in self-defense. Terry Gibbs, defendant's sister, provided a certification in support of defendant's PCR petition stating that Nakia Allen told her that he arrived at Wash's Inn just after the shooting, removed a gun from Byrd's person when he was lying on the ground, and threw it away. Terry Gibbs also claimed that Nakia told her that he was willing to testify at Gibbs' trial. Terry Gibbs stated that she notified defendant and his attorney of these facts.

Nakia Allen, who is John Byrd's cousin, also provided a certification in support of Gibbs's PCR petition, describing the events on the night of the shooting. Allen explained he arrived at Wash's Inn just after Byrd was shot and that he proceeded to Byrd's body at which point he noticed Byrd was carrying a "chrome gun in his waistline." Allen then certified he instructed the crowd to stall the police, took the gun from Byrd's waistline, left the scene and threw the gun in the ocean. Allen also certified that he told Terry Gibbs of these events two weeks after the shooting and told her to "get Carnell's trial attorney to contact [him] because [he] was willing to testify at Carnell's trial about all that [he] had done on the night of the shooting at Wash's Inn." Terry Gibbs stated in her certification in support of post conviction relief that she shared these facts with defendant and his attorney.

Omar Davis also provided an undated certification, stating that while at Wash's Inn on the night of the shooting, he "saw an individual approach Alex Crawford while he was on the ground and remove the gun from his hand. This individual then left in a truck."

The trial court rejected defendant's claim that his attorney had been ineffective for failing to call Nakia Allen and Omar Davis as witnesses at his trial. Although we do not fully subscribe to the reasons stated by the

trial court, we concur in its ultimate conclusion.

The trial court appeared to attribute lesser significance to the certifications of Allen and Davis because they were executed in 2003. We are uncertain as to why the trial court found that date material; the certifications were clearly executed in conjunction with defendant's PCR petition, which was initially filed in 2003. Nor do we think that their proposed testimony, particularly that of Allen, could fairly be characterized as cumulative. Allen, who is Byrd's cousin, certified that he himself had removed a gun from Byrd as Byrd lay wounded in the street.

Even if that testimony had been received, however, it would not establish that defendant acted in self-defense when he shot Crawford. Defendant, who testified at trial, never said that he feared Crawford had a gun. He admitted on cross-examination that he never saw Crawford with a gun and that Crawford had never given defendant a reason to fear him. Defendant was not justified in using deadly force against Crawford "unless [he] reasonably believe[d] that such force [was] necessary to protect himself against death or serious bodily harm [.]" N.J.S.A. 2C:3-4b(2). Further, deadly force is not justified if the actor "knows that he can avoid the necessity of using such force with complete safety by retreating...." N.J.S.A. 2C:3-4b(2)(b).

Nor would that proposed testimony further defendant's claim of self-defense with respect to Byrd. We cannot help but note, for example, that it was not disputed at trial that defendant, after initially firing his gun at Byrd, approached Byrd as he lay helplessly on the ground and fired several more bullets into him. Defendant could not have had a reasonable belief at that juncture that it was necessary for him to continue to shoot the gravely wounded Byrd.

ECF No. 51-33 at 8-10.

The Appellate Division found that counsel was not ineffective for failing to present these witnesses. Petitioner has not shown that had these witnesses testified, the outcome of the trial would have been different, a necessary showing under Strickland.

First, the record reflects that when Terry Gibbs, defendant's sister, testified at trial, she never mentioned receiving information from Nakia Allen related to a gun on Byrd's possession. ECF No. 51-7 at 128-33. Second, as the Appellate Division notes, and verified by the record, Petitioner shot Mr. Byrd multiple times even after he was on the ground, wounded, belying his argument of self-defense. See, e.g., ECF No. 51-4 at 104 (in which Cory Crawford, the brother of Alex Crawford, stated on the record that after Mr. Byrd was laying on the ground, Petitioner shot "like two more, three more" times). Further, there was witness testimony that Mr. Byrd did not appear to have a gun on him during the shooting. See, e.g., ECF No. 51-4 at 101 (in which Cory Crawford stated that he did not see Mr. Byrd with a gun).

With respect to Mr. Crawford, Petitioner himself testified that he did not see or believe Mr. Crawford had a gun on him during the shooting. ECF No 51-7 at 75-76. Thus, whether or

not trial counsel called Omar Davis to testify, Petitioner's argument of self-defense was negated by Petitioner himself.

Therefore, to the extent Nakia Allen or Omar Davis were available to testify, the Appellate Division did not unreasonably apply Strickland in finding trial counsel was not ineffective for failing to present these witnesses. Because Petitioner's own testimony, and the testimony of other witnesses, severely discredited any argument of self-defense, it is not reasonably probable that outcome of the case would have been a different had Mr. Allen and/or Mr. Davis testified. As such, the Appellate Division did not violate clearly established law and the Court denies habeas relief on this claim.

### 4. Ground Four: Intoxication Defense

In Ground Four, Petitioner argues that he was intoxicated at the time he committed the offense, such that trial counsel was ineffective for failing to raise an intoxication defense. ECF No. 15 at 19.

As an initial matter, this Court notes that while Petitioner raised this claim on his petition for PCR, ECF No. 51-26 at 43-44, and the PCR court denied his claim, ECF No. 51-28, he does not appear to have raised it on appeal. However, because this Court's de novo review is a more exacting standard than AEDPA deference, the Court finds Petitioner's claims fail under either standard. See Harrington, 562 U.S. at 101

(explaining that under AEDPA deference a state court's resolution of a matter must be *unreasonable*) (emphasis added).

Petitioner's argument that he was intoxicated at the time of trial is contradicted by the record. While Petitioner did testify that he had one drink, ECF No. 51-7 at 46, the remainder of his testimony about the events that transpired give no indication that he was impaired when he committed the offense. For example, he indicated that he initially left the inn and drove home to get his dog, id. at 47, he was able to recall the conversation he had with Mr. Byrd about where they should fight, id. at 49, and after the shooting, he drove himself from the murder scene, recollecting the route he took and the relevant street names. Id. at 73. The record presents no conclusive evidence that Petitioner was intoxicated during the shooting, such that trial counsel was not ineffective for failing to argue an intoxication defense. Trial counsel sought to develop the theory of self-defense, and cannot be faulted for failing to argue a second theory. See Hess, 135 F.3d at 908 (explaining that we give deference to counsel's strategic trial decisions). Therefore, trial counsel was not deficient under Strickland and this claim for habeas relief is denied.

### 5. Ground Five: Verdict Sheet

Petitioner argues that his trial and appellate counsel were ineffective for failing to object to the verdict sheet which did

not state that "self-defense constituted a defense."[4]  ECF No. 15

at 19.  Again, this claim appears unexhausted, because it was

never raised on appeal from the denial of PCR.  Nevertheless,

this claim fails on the merits.

    As Respondents note, New Jersey state law simply does not

require that a verdict sheet include self-defense.  See State v.

Branch, 693 A.2d 1272, 1284 (N.J. Sup. Ct. App. Div. 1997)

(finding "no reason to conclude that the omission of self-

defense from the verdict sheet" was plain error since "[t]here

is no verdict per se of self-defense") (rev'd on other grounds,

714 A.2d. 918 (N.J. 1998)); State v. Colon, Indictment No.99-06-

2311, 2006 WL 1418003, at *2 (N.J. Super. Ct. App. Div. May 19,

2006) ("even if there was sufficient evidence to warrant

submission of self defense to the jury, there is no requirement

that this defense be presented in the form of a separate

question on the verdict sheet.").  Further, the jury was more

than adequately instructed on the theory of self-defense.  ECF

No. 51-8 at 40-46.  Therefore, because the claim is meritless

under state law, the alleged failure of trial and appellate

counsel to object to the verdict sheet fails under Strickland,

as counsels' performance did not fall below an objective

---

[4]    A copy of the verdict sheet appears in the appendix to
Petitioner's PCR petition.  ECF No. 51-31 at 77-78.

                                28

standard of reasonableness.  As such, this claim for habeas relief is denied.

### 6. Ground Six: Witness Testimony

Petitioner states that his trial counsel was ineffective for failing to call Ebony Mays as a witness on his behalf.  ECF No. 15 at 20.  He explains that Ms. Mays would have testified about a prior fight between Petitioner and Mr. Byrd, which would have bolstered his argument of self-defense.  Id.  Again, this claim appears unexhausted, as it was never raised on appeal. Nevertheless, the PCR court's analysis of this claim is instructive.

The PCR court's opinion points to a statement made by Ebony Mays to the Atlantic County Prosecutor's Office in which she mentioned a past fight between Petitioner and Mr. Byrd.  The statement reads, in relevant part:

> At this time, Mays stated that John and Carnell had a fight some time ago at Bentley's Club (previously Wondergardens).  She believed that John may have hit Carnell.  Mays stated that Carnell and John just do not like each other.  She did not know any other details.

ECF No. 51-39 at 2.

The PCR court found this cumulative, as there "was testimony at trial that Petitioner and John Byrd did not get along."  ECF No. 51-28 at 7.  In addition, Petitioner failed to present a sworn affidavit from Ms. Mays, and there was "little

she could have offered the court other than a rumor she heard."
Id.

The Court finds that Petitioner has not shown that his counsel's failure to call Ms. Mays as a witness prejudiced the outcome of the trial, for substantially the same reasons as the PCR court. As evidenced by the above statement, Ms. Mays knew virtually no details of the previous fight between Petitioner and Mr. Byrd. Further, the record reflects ample testimony at trial relating to Petitioner and Mr. Byrd's contentious relationship. Therefore, because this claim fails under the second prong of Strickland, the Court denies habeas relief on this claim.

### 7. Ground Seven: Taped Conversation

In Ground Seven, Petitioner alleges that in a taped conversation occurring after trial, his trial counsel "indicated that he was ineffective." ECF No. 15 at 21. Like a number of the prior claims, while this claim was raised before the PCR court, it was never raised on appeal. The Court finds this claim lacks merit.

Petitioner merely points to an entire undated transcript of a taped conversation which allegedly took place between trial counsel and two other individuals in which they appear to talk about Petitioner's trial. ECF No. 51-40. The Court has reviewed the full transcript of the taped statement and, from

the parts that are comprehensible, finds nowhere in which trial counsel stated he was ineffective. Instead, to the extent the transcript is accurate, the opposite is true; trial counsel worked vigorously in defense of Petitioner. Therefore, this claim for habeas relief is denied, as it is unsupported by the evidence.

### 8. Ground Eight: Witness Testimony

Petitioner argues his trial counsel was ineffective for failing to call Kevin Dorsey to testify at his trial. ECF No. 15 at 21. He explains that Mr. Dorsey was present at the shooting and could have testified that the victim, Mr. Crawford, "appeared to . . . confront[]" Petitioner. Id. Once again, this claim was never raised on appeal from the denial of PCR.

Petitioner's argument is contradicted by the record. Mr. Dorsey was called as a witness by the State, but provided no useful testimony, claiming repeatedly that he did not remember the events surrounding the shooting. ECF No. 51-4 at 139–43. Similarly, on cross-examination by trial counsel, Mr. Dorsey repeatedly stated that he did not recall the events of the shooting. Id. at 143–147. Thus, trial counsel did in fact try to elicit testimony from Mr. Dorsey, but the witness failed to provide any testimony in the manner Petitioner describes. As such, this claim is denied because trial counsel was not deficient under Strickland.

### 9. Ground Nine: False Testimony

In Ground Nine, Petitioner claims his trial counsel was ineffective for advising "him to lie about the shell casing contained in the gun." ECF No. 15 at 22. Petitioner does not appear to have exhausted this claim; nevertheless, the Court denies this claim on the merits.

Petitioner has provided no support for the claim here, and did not provide support for the claim when he presented it to the state court on his petition for PCR. ECF No. 51-26 at 60. Notably, the PCR court did not address this claim in its opinion.

Reviewing the record, the Court finds only that Petitioner testified on cross-examination by the State that he could not "recall" how many bullets were in the magazine of his gun. ECF No. 51-7 at 59-60. Because it is Petitioner's burden to show that he is entitled to relief for each claim raised on a habeas petition, and because Petitioner has failed to provide any facts or evidence to substantiate this claim, the Court denies relief on this claim. See Eley, 712 F.3d at 846.

### 10. Ground Eleven: Jury Instruction

In Ground Eleven, Petitioner argues that his trial and appellate counsel were ineffective for failing to object to the jury instructions which were confusing, insofar as they failed to clearly explain the law, and the "court charged the jury with

self-defense as to both John Byrd [and] Alex Crawford." ECF No. 15 at 23. He explains that "[n]o charge for self-defense should have been given with respect to Alex Crawford, as his death was a result of a shooting directed against John Byrd." Id. This claim appears to have been raised before the PCR court, but never raised on appeal. To the extent the claim is unexhausted, it nevertheless lacks merit.

The record is abundantly clear that the trial judge instructed the jury as to the necessary elements of self-defense, demonstrating the instructions did in fact clearly explain the law. See ECF No. 51-8 at 40–46. Further, Petitioner's entire theory of the case was based on an argument of self-defense; failing to charge the jury on self-defense would have been illogical. In fact, instructing on self-defense with respect to Alex Crawford was a windfall for Petitioner, as there was little evidence on the record to indicate Petitioner's shooting of Mr. Crawford was in self-defense.[5] Based on these facts, trial and appellate counsel were not deficient under Strickland and Petitioner is denied relief on this claim.

---

[5]     Petitioner testified on cross merely that he saw Mr. Crawford: "running up towards me" ECF No. 51-7 at 76, "coming towards me", id. at 89, and that he felt Mr. Crawford "was trying to do something to me." Id. at 89. But he also testified that he never saw Mr. Crawford with a gun. Id. at 76.

## 11.  Ground Twelve: Deficient Trial Counsel

Petitioner argues that the cumulative effect of trial counsel's deficiencies deprived him of the effective assistance of counsel.  ECF No. 15 at 24.  While this claim does not appear to have been properly exhausted, it nevertheless fails on the merits.

The Third Circuit, citing to Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), has explained that "a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'" Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007).  And while it is true "that errors that individually do not warrant habeas relief may do so when combined", id., here, Petitioner has failed to demonstrate that the cumulative errors resulted in actual prejudice.  For the reasons described earlier in this Opinion, the evidence against Petitioner was substantial.

Petitioner himself testified that he did not see or believe Mr. Crawford had a gun and the record indicates Mr. Crawford was merely an innocent bystander.  As well, witnesses testified that Petitioner shot Mr. Byrd multiple times after he was already on the ground wounded, and that Mr. Byrd did not have a gun.  Thus, because Petitioner has failed to demonstrate actual prejudice by his trial counsel, the claim is denied.

**B. Ground Ten: Jury Instructions**

In Ground Ten, Petitioner argues that the jury instructions were inadequate in that they failed to properly distinguish between murder, aggravated manslaughter, and reckless manslaughter.  ECF No. 15 at 22.

Petitioner raised this claim to the state court on his application for PCR, and the PCR court rejected it, both because it was procedurally defaulted, and lacked merit.  ECF No. 51-28 at 6.  Putting the issue of procedural default aside, this claim fails on the merits.

As noted above, the standard for habeas relief based on an erroneous jury instruction looks to "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  <u>Cupp</u>, 414 U.S. at 147.  Here, before instructing the jury on each offense, the trial judge specifically stated:

> Now, at this point, ladies and gentleman, I'm going to go into an explanation of the offenses that you are going to have to deal with in your deliberations and we're going to do this one at a time and I'm asking you again and reminding you again not to mix these up, but consider them in the order in which we discuss them . . .

ECF No. 51-8 at 20.

The judge then continued to instruct the jury on each offense, clearly distinguishing murder, from aggravated

manslaughter, from reckless manslaughter.  Id. at 20–40.  The
judge clearly defined and explained the differing mental states
of murder and aggravated manslaughter, id. at 34–35, and
emphasized the different elements required to find Petitioner
guilty of aggravated manslaughter, as opposed to reckless
manslaughter.  Id. 37–38.  Based on these facts, the Court is
satisfied that the jury instruction did not violate Petitioner's
constitutional rights, and this claim for habeas relief is
denied.

### C. Ground Thirteen: Illegal Sentence

In Ground Thirteen, Petitioner argues that his sentence is
illegal under Blakely v. Washington, 542 U.S. 296 (2004), in
that his sentence was excessive.  ECF No. 15 at 24.  Petitioner
raised this claim on his application for PCR, but does not
appear to have raised it on appeal.

The Court first notes that a review of the pertinent dates
demonstrates that Blakely is likely not applicable.  In Blakely,
the trial court sentenced the defendant to more than three years
beyond the 53-month statutory maximum, on the basis that he
acted with "deliberate cruelty."  542 U.S. at 303.  On June 24,
2004, the Supreme Court reversed, explaining that it violates a
defendant's Sixth Amendment right to a jury trial where the
facts supporting such a finding are neither found by the jury,
nor admitted to by the defendant.  Id. at 303–04.  Regarding

36

whether <u>Blakely</u> applies retroactively, the Third Circuit has
stated "[t]hough we have not decided whether <u>Blakely</u> applies
retroactively, it stands to reason that it would not, because
'<u>Blakely</u> simply applied <u>Apprendi [v. New Jersey</u>, 530 U.S. 466
(2000)] to a different statutory scheme[.]'" <u>Reinhold v. Rozum</u>,
604 F.3d 149, 154 n.4 (3d Cir. 2010) (citing <u>Lloyd v. United
States</u>, 407 F.3d 608, 612 (3d Cir. 2005)).  Based on the record
provided, Petitioner's direct appeal concluded in June of 2003,
when the Appellate Division affirmed the sentence imposed at
Petitioner's resentencing, which was prior to the decision in
<u>Blakely</u>.[6]  ECF No. 51-22.  Thus, to the extent Petitioner's
sentence is excessive, because he was sentenced prior to the
Supreme Court's holding in <u>Blakely</u>, <u>Blakey</u> would likely not
affect this Court's analysis.

   Moreover, state sentences are generally matters of state
law.  <u>See</u> <u>Chapman v. United States</u>, 500 U.S. 453, 465 (1991) ("a
person who has been so convicted is eligible for, and the court
may impose, whatever punishment is authorized by statute for his
offense, so long as that penalty is not cruel and unusual . . .
and so long as the penalty is not based on an arbitrary

---

[6]   Petitioner does not appear to have filed a petition for
certification to the New Jersey Supreme Court from the Appellate
Division June 12, 2003 order on resentencing.

distinction that would violate the Due Process Clause of the Fifth Amendment") (citations omitted).

Here, the facts do not indicate that the sentence imposed is cruel and unusual, or arbitrary in a manner that would violate the United States Constitution.  Petitioner was sentenced to fifty years for murder and a consecutive twenty years for attempted murder.  On the murder count, during the resentencing, the judge sentenced Petitioner to fifty years, and stated "[i]t is a first-degree crime and while the sentence could be up to life imprisonment with no parole for 30 years, I am imposing a sentence of 50 years . . ."  ECF No. 51-10 at 33. Thus, on the murder count, Petitioner received far less than the possible maximum; the Court is, therefore, satisfied that his sentence was not unconstitutional.

With respect to the attempted murder count, the PCR court explained that at the time Petitioner was sentenced, "the presumptive sentence was 15 years (10-20)."[7]  ECF No. 51-28 at 7. Here, Petitioner was sentenced to 20 years, which still falls

---

[7]     The PCR court denied this claim explaining that because State v. Natale, 878 A.2d 724 (N.J. 2005) — which, similar to Blakely, precludes New Jersey courts from sentencing defendants above presumptive statutory terms without submitting aggravating factors to the jury — was decided after the direct appeal on Petitioner's case concluded, the holding in Natale did not apply to his sentence.  ECF No. 51-28 at 7.

within the sentencing range.[8]  The Court does not find the

sentence cruel and unusual, or arbitrary.  See, e.g., Apprendi,

supra, 530 U.S. at 481 ("we should be clear that nothing in this

history suggests that it is impermissible for judges to exercise

discretion . . . in imposing a judgment *within the range*

prescribed by statute.  We have often noted that judges in this

country have long exercised discretion of this nature in

imposing sentence *within statutory limits* in the individual

case") (emphasis in original); Lockyer v. Andrade, 538 U.S. 63,

77 (2003) (explaining that a state sentence raises federal

constitutional concerns only when it is grossly disproportionate

to the crime committed); United States v. Miknevich, 638 F.3d

178, 185–86 (3d Cir. 2011) (explaining that the Eighth Amendment

only forbids "punishment grossly disproportionate to the

severity of the crime . . .a sentence within the limits imposed

by statute is neither excessive nor cruel and unusual under the

Eighth Amendment.") (internal quotations and citations omitted).

Because the sentence imposed does not violate Petitioner's

constitutional rights, the Court denies relief on this claim.

---

[8]     Under N.J. Stat. Ann. § 2C:5-4a, "an attempt . . . to
commit murder . . . is a crime of the first degree . . .", and
under N.J. Stat. Ann. § 2C:43-6a(1), a sentence on a first
degree crime "shall be fixed by the court and shall be between
10 years and 20 years".

**D. Ground Fourteen: Denial of PCR and Evidentiary Hearing**

In Petitioner's final ground for habeas relief, he argues that the PCR court erred in denying his PCR petition or, in the alternative, erred in failing to grant him an evidentiary hearing.  ECF No. 15 at 24.)

Once again, because the Court finds Petitioner's claims meritless, and because Petitioner bears the burden of establishing his entitlement to relief for each claim presented, this claim must be denied.  See Eley, 712 F.3d at 846; see also 28 U.S.C. § 2254(d).

**IV.   CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right insofar as Petitioner's claims are without merit,

Petitioner's habeas petition is inadequate to deserve encouragement to proceed further.  As such, a certificate of appealability will be denied.

## V.   **CONCLUSION**

For the reasons stated above, Petitioner's Amended Petition for habeas relief will denied and Petitioner will be denied a certificate of appealability.  An appropriate order follows.


Dated: April 30, 2018                      s/ Noel L. Hillman
At Camden, New Jersey            Noel L. Hillman
                                                United States District Judge